**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

KATHLEEN M. DUFFY; and LINDA
DUFFY KELLEY,

        Plaintiffs,

v.                              Case No. 6:14-cv-1545-Orl-37TBS

FOX NEWS NETWORKS, LLC,

        Defendant.

**ORDER**

This cause is before the Court on the following:

1. Defendant Fox News Network, LLC's Motion to Dismiss the Amended Complaint and Incorporated Memorandum of Law (Doc. 29), filed November 17, 2014; and

2. Plaintiff's Amended Memorandum in Opposition to Defendant's Motion to Dismiss (Doc. 37), filed December 22, 2014.

Upon consideration, the Court finds that the Motion is due to be denied.

**BACKGROUND[1]**

On July 4, 2014, Plaintiffs Kathleen M. Duffy and Linda Duffy Kelley went to New

---

[1] The facts in this section are taken as true and construed in favor of Plaintiff solely for the purpose of this motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). They are not the Court's findings of fact.

Smyrna Beach, Florida with family and friends to celebrate Independence Day. (Doc. 11 ¶¶ 7–8.) They brought with them a number of belongings, including "beach chairs, children beach toys, boogey boards, a wheeled cart and several beach canopies." (*Id.* ¶ 9.) Towards the end of the day, Plaintiffs temporarily left the beach. (*Id.* ¶ 11.) While they were gone, a member of their group called Plaintiffs to tell them that the remaining members were leaving. (*Id.*) Plaintiffs told the caller "to leave [their] belongings at the beach and that [they] would return to the beach to retrieve them." (*Id.*)

Plaintiffs later returned to "what they believed was the correct site" at the beach and saw "what they believed were their belongings as well as some of the group's belongings, including a canopy." (*Id.* ¶ 12.) The items were unattended and "were either identical or confusingly similar to those of Plaintiffs and those of the group." (*Id.* ¶¶ 13–14.) Plaintiffs gathered the items. (*Id.* ¶ 15.) While they were dismantling the canopy, the owner of the items confronted Plaintiffs and filmed them on his cellular telephone (the "Video"). (*Id.* ¶¶ 16–18.) Plaintiffs explained that they believed the items were theirs, but they ultimately left them with the owner and got upset that he was filming them. (*Id.* ¶¶ 17–24.)

Defendant Fox News Network LLC ("Fox") obtained the Video and, on July 6, 2014, aired it on television (the "Segment") and the internet (the "Article") throughout the United States and foreign countries.[2] (*Id.* ¶¶ 25–26.) In connection with broadcasting the Video, Fox said—through verbal statements made by its hosts on the Segment and written statements made by the writers of the Article—that Plaintiffs: (1) were thieves; (2) "stole

---

[2] The Segment during which the Video was aired and the Statements were made can be found with the Article at http://insider.foxnews.com/2014/07/06/shocking-video-woman-attacks-man-after-he-catches-her-trying-steal-his-beach-belongings.

2

a pavilion"; (3) were "caught stealing"; (4) were "stealing"; (5) were "trying to steal"; (6) "attempted theft"; (7) were "caught stealing [a] beach canopy"; (8) were "busted trying to steal"; and (9) were "caught red handed" (the "Statements"). (*Id.* ¶¶ 28–30.)

Alleging that Fox is vicariously liable for the defamatory Statements made by its employees and agents, Plaintiffs filed this action on September 24, 2014, invoking the Court's diversity jurisdiction. (Doc. 1.) They subsequently filed an Amended Complaint on September 29, 2014 (Doc. 11).[3] Plaintiffs assert that Fox is vicariously liable for the false accusations, which have defamed Plaintiffs and caused them to suffer damages. (*Id.* ¶¶ 35–42.) Fox moves to dismiss the action (Doc. 29), Plaintiffs oppose (Doc. 37), and the matter is now ripe for the Court's adjudication.

## STANDARDS

On a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), the Court typically limits its considerations to "the well-pleaded factual allegations" in the complaint. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007). In making this plausibility determination, the court must accept the factual allegations as true and construe them in the light most favorable to the plaintiff; however, "this tenet . . . is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers mere "labels and conclusions" is therefore insufficient. *Twombly*, 550 U.S. at 555.

---

[3] Plaintiffs voluntarily dismissed their claims for invasion of privacy and misappropriation of their likenesses in violation of Florida Statute § 540.08 (*see* Doc. 36), leaving only their claim for defamation.

3

When analyzing a motion to dismiss, the Eleventh Circuit permits consideration of documents outside of the complaint in this limited circumstance: when (1) the plaintiff refers to the document in the complaint; (2) the document is central to the plaintiff's claim; (3) the contents of the document are not in dispute; and (4) the defendant attaches the document to its motion to dismiss. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

## DISCUSSION

Fox moves to dismiss the action, arguing that: (1) Plaintiffs failed to satisfy a condition precedent to their defamation action, namely notice under Florida Statute § 770.01; (2) Plaintiffs fail to state a claim for defamation because they cannot plausibly allege that Fox made any false statements of fact; (3) Fox's statements constitute protected opinion under the First Amendment and thus are not actionable; and (4) regardless, Fox's statements are substantially true. (*See* Doc. 29.) In an inartfully drafted response, Plaintiffs argue, *inter alia*, that their notice was sufficient, they have adequately alleged a claim for defamation, and the truth of the Statements and Plaintiffs' criminal intent are questions for the jury. (Doc. 37.)

As a threshold matter, the Court finds that Plaintiffs satisfied § 770.01. The statute requires that before bringing suit for defamation, "the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory." Fla. Stat. § 770.01. "[T]he statute requires the best possible notice." *Nelson v. Associated Press, Inc.*, 667 F. Supp. 1468, 1475 (S.D. Fla. 1987).

Plaintiffs' August 5, 2014 pre-suit demand letter ("Demand Letter") satisfied the

notice requirement. (*See* Doc. 29-5.) Significantly, the Demand Letter provided a link to the Article and the Segment that Fox aired regarding the Video, which is only one minute and thirty-seven seconds long, and stated that the "imputations of theft" contained therein were the bases for the defamation claim. (*Id.*) The Demand Letter thus identifies the source of the allegedly defamatory statements and is sufficient to put Fox on notice and satisfy the statutory prerequisites for the defamation action. *See Nelson*, 667 F. Supp. at 1475 (explaining that, when possible, a reference to the actual articles that contain the allegedly defamatory statements would have been the best notice).

Applying Florida law, to survive a motion to dismiss, Plaintiffs must allege the following elements for a defamation claim: (1) Fox published statements to a third party; (2) the statements were false; (3) Fox acted negligently as to the falsity of the statements; (4) the statements were defamatory; and (5) they suffered actual damages. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (citing Restatement (Second) of Torts § 558) (1977)).

Plaintiffs have adequately pled each element of a defamation claim sufficient to survive a motion to dismiss. First, Plaintiffs allege that Fox published the Video and Statements on television and the internet. (Doc. 11 ¶¶ 26–30). Second, Plaintiffs allege that the Statements were false because they "did not steal or attempt to steal anything," "the incident was the result of an innocent mistake and confusion," and they did not have a "criminal intent to steal or attempt to steal anything." (*Id.* ¶¶ 22–24; *see also id.* ¶ 34.) Third, Plaintiffs allege that Fox acted negligently because it made the Statements "with knowledge of [their] falsity or with a gross, blatant and reckless disregard so to [their] truth or falsity" and without conducting "any inquiry or investigation to determine [their] truth or

5

falsity." (*Id.* ¶¶ 36–38.) Fourth, Plaintiffs allege that the Statements were defamatory. (*Id.* ¶¶ 35, 37, 39.) Finally, Plaintiffs allege damages. (*Id.* ¶¶ 39–42.) At this stage of the proceedings, these properly pled, non-conclusory allegations are all that is necessary unless the United States Constitution protects Defendant's statements such that she cannot state a claim for defamation.

Fox's argument that the Statements are non-actionable as pure opinion or rhetorical hyperbole is unpersuasive at the motion to dismiss stage. (*See* Doc. 29, pp. 13–19.) An opinion, unlike a statement of fact, is incapable of the quality of truth or falsity. *Milkovich v. Loraine Journal Co.*, 497 U.S. 1, 12 (1990). *Milkovich* describes the constitutional limits on two types of speech cases: speech that may be characterized as "rhetorical hyperbole," "parody," "loose," or "figurative," and speech that is related to matters of public interest, including matters involving public officials. *Id.* at 14–19; *see also Condit v. Dunne*, 317 F. Supp. 2d 344, 360–61 (S.D.N.Y. 2004). Here, we are concerned with only the former, although both may find safe harbor in the port of protected speech. Fox provides a good-hearted description of "Fox & Friends Weekend" morning shows, notwithstanding the fact that a reasonable viewer could just as easily be of the mind that a program that holds itself out as a provider of "news" implies that it involves some aspect of investigative journalism above and beyond mere opinions on random current events culled from the internet landscape. Moreover, its website—denominated "Fox News Insider," could also suggest to the visitor that Fox has inside access or information to facts—displays online articles as "news" and not just comical clips or rhetorical hyperbole. At the pleading stage, Fox has failed to demonstrate that the alleged defamatory statements are the sort of "loose, figurative language that no reasonable

person would believe presented facts." *Horsley v. Feldt*, 304 F. 3d 1125, 1132–33 (11th Cir. 2002). Accordingly, considering the Video and Article under the "incorporation by reference" doctrine along with the allegations of the Amended Complaint, the Court is not persuaded that the alleged defamatory statements are of such constitutional value as to be entitled to the protective umbrella of free speech absent development of the record.[4] Thus, Fox's argument is unavailing.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant Fox News Network, LLC's Motion to Dismiss the Amended Complaint and Incorporated Memorandum of Law (Doc. 29) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on May 20, 2015.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

---

[4] The Court reached this conclusion despite the fact that Plaintiff's briefing on the constitutional protection afforded to the Statements was woefully deficient and decidedly unhelpful.

7